UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SONJA M. STILES for C. M. S., III,

        Plaintiff,

v.                                                 Case No.  5:07-cv-52-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.
_____

## ORDER

Sonja M. Stiles, on behalf of her minor son, appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for childhood Supplemental Security Income ("SSI") disability benefits. (Doc. 1.) The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 12 & 13.) For the reasons discussed below the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Sonja M. Stiles, on behalf of her son,[1] protectively filed an application for children's SSI benefits on March 25, 2004, alleging that Plaintiff became disabled on December 1, 1998 due to asthma, allergies and speech problems. (R. 72-75, 82.) Plaintiff's application was denied initially (R. 28-30) and on reconsideration. (R. 33-35.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. 36) and the ALJ conducted a hearing on February 17, 2006. (R. 314-38.)

---

[1] Even though this action is being brought by the mother on behalf of her minor son, the Court will refer to the minor son as the Plaintiff.

On June 21, 2006, the ALJ issued a decision finding that the Plaintiff was not disabled, and thus, not eligible for SSI payments. (R. 11-22.) Plaintiff requested review of the hearing decision with the Appeals Council. (R. 9-10.) The Appeals Council, on December 11, 2006, denied Plaintiff's Request for Review (R. 4-6), making the ALJ's hearing decision the final decision of the Commissioner.[2] On February 6, 2007, Plaintiff filed a timely appeal to this Court. (Doc. 1.)

## II. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4] In reviewing the Commissioner's decision, the district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5]

---

[2] See 20 C.F.R. § 416.1481 (2003).

[3] See 42 U.S.C. § 405(g) (2003).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

Congress has empowered the district court to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause.[6] Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[7] The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[8] Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.[9]

### III. **THE LAW**

The law considers a child disabled, for the purposes of children's SSI benefits, if that child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[10] However, no child who "engages in substantial gainful activity . . . may be

---

[6] 42 U.S.C. § 405(g) (sentence four).

[7] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[8] Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[9] Bowen v. Heckler, 748 F.2d 629, 631, 636-37 (11th Cir. 1994).

[10] 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

considered to be disabled."[11] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[12] The statute does not define "marked and severe functional limitations."

In determining the severity of impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments.[13] In determining the disability of a child, the Commissioner must make reasonable efforts to ensure that a qualified pediatrician or other specialist evaluates the case.[14]

The Commissioner has promulgated regulations governing eligibility for SSI benefits.[15] In accordance with Congressional intent, the regulations define "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings."[16]

The regulations set forth a three-part sequential test the Commissioner must follow when determining disability in children.[17] First, a child must show that the child is not performing substantial gainful activity.[18] Second, if the child is not working, the child

---

[11] 42 U.S.C. § 1382c(a)(3)(C)(ii).

[12] 42 U.S.C. § 1382c(a)(3)(D).

[13] 42 U.S.C. § 1382c(a)(3)(G).

[14] 42 U.S.C. § 1382c(a)(3)(I).

[15] See 20 C.F.R. Pt. 416, Subpt I (2003); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

[16] 20 C.F.R. § 416.902 (2007).

[17] 20 C.F.R. § 416.924(a) (2007).

[18] 20 C.F.R. § 416.924(b).

must show that the child suffers from an impairment or combination of impairments that is severe.[19] Third, if there are severe impairments, the child must show that the child's impairments meet, medically equal, or functionally equal the severity of an impairment in the listings.[20] If the child does not meet all three criteria then the child is not disabled.

In addition to the three-part test, the Commissioner must find that the child's impairment meets the duration requirement, which means the impairment must be expected to result in death or to last longer than 12 months. If the child meets all three criteria and the duration requirement, then the child is disabled.[21]

Provisions for determining functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning.[22] There are six domains of functioning to be considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.[23] A "marked" limitation in a domain means that the child's impairment "interferes seriously with [their] ability to independently initiate, sustain, or complete activities."[24] An "extreme" limitation

---

[19] 20 C.F.R. § 416.924(c).

[20] 20 C.F.R. § 416.924(d).

[21] 20 C.F.R. § 416.924(d)(1).

[22] 20 C.F.R. § 416.926a(a)

[23] 20 C.F.R. § 416.926a(b)(1).

[24] 20 C.F.R. § 416.926a(e)(2).

in a domain means that the child's impairment "interferes very seriously with [their] ability to independently initiate, sustain, or complete activities."[25]

## IV. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff's only challenge to the decision of the ALJ relates to Plaintiff's Attention Deficit Hyperactivity Disorder (ADHD) and, therefore, the Court will focus upon the records relevant to this impairment.

Plaintiff, born on December 1, 1998, was a seven-year old child at the time of the hearing. (R. 72, 316.) At the hearing, Plaintiff's mother, Sonya Stiles testified that Plaintiff is in the first grade at College Park Elementary School and participates in exceptional student classes for his speech. (R. 319, 331.) Plaintiff also receives tutoring for reading at home. (R. 331-32.) Plaintiff testified that he has a few good friends with whom he likes to attend church camp. (R. 322.)

Plaintiff's mother told the ALJ that Plaintiff was in two fights on the school bus the year of the hearing. (R. 329, 332.) She also testified that her son does not get along with his older sister. (R. 325.)

Plaintiff's mother explained that Plaintiff does not have respect for any authority or anybody or anything. (R. 326.) For example, she stated that her son frequently urinates and soils his underwear and hides them. (R. 326.) To deal with the problem, she sometimes makes Plaintiff wear pull-ups. (R. 328.)

Plaintiff's mother was asked to observe Plaintiff at school to help with Plaintiff's behavior problems. She observed that her son fidgets and ignores instructions from his

---

[25] 20 C.F.R. § 416.926a(e)(3).

teacher and tends to wander. (R. 329.) According to Plaintiff's mother, he sits next to the teacher's desk to keep from distracting the other kids. (R. 330.) Also, Plaintiff was in counseling a few years before the hearing and was prescribed Adderall and Tenex for his behavior problems. (R. 334.)

Plaintiff began speech therapy on May 1, 2002 for a severe speech sound production impairment and a moderate receptive and expressive language impairment. (R. 216-22.) Plaintiff attended a speech therapy group from August of 2002 through May 20, 2004. (R. 212-227.) The Speech-Language Pathology Pediatric Discharge Summary reveals that Plaintiff scored above average for his overall language. (R. 213.) Plaintiff was also found to be age appropriate with his grammatical structures. Id. The notes of the discharge summary include the recommendation that Plaintiff continue speech therapy at his school. (R. 214.) Plaintiff's most recent school speech therapy records dated January 10, 2006, note that he produces most speech sounds correctly. (R. 144.)

Records from Plaintiff's pediatrician, Yves-Lande Pierre, M.D. reveal that on June 14, 2004 Plaintiff's mother complained to Dr. Pierre about her son's behavior problems. (R. 242.) Dr. Pierre referred Plaintiff to Siraj Siddiqi, M.D., for an ADHD evaluation. (R. 279.) After examining Plaintiff on October 13, 2004, Dr. Siddiqi diagnosed Plaintiff with ADHD combined type and prescribed Concerta. (R. 304.)

Dr. Siddiqi examined Plaintiff, again, on December 1, 2004. (R. 301-02.) Plaintiff's mother told Dr. Siddiqi that she took her child off of Concerta because he was not responding to the medication and, instead, seemed more aggressive, less attentive and more disruptive in social settings. (R. 301.) Dr. Siddiqi observed that Plaintiff was

alert and active, and engaged in conversation easily. Id. Dr. Siddiqi gave Plaintiff a trial dosage of Adderall XR and prescribed Tenex until Plaintiff's follow-up appointment. (R. 301-02.)

The last records from Dr. Siddiqi dated February 9, 2005, reveal that with the medication Plaintiff's behavior was significantly improved, and that Plaintiff was making academic progress. (R. 300.) Dr. Siddiqi noted that Plaintiff had not been disruptive and had "been quite compliant to teacher's and mom's directives." Id.

The record includes A Childhood Disability Evaluation Form dated February 2, 2005. (R. 286.) The evaluator, P. Boger, Ph.D. found that Plaintiff's ability to attend and complete tasks, and his ability to interact and relate to others are less than marked. Otherwise, Plaintiff is not limited in his ability to acquire and use information or in his ability to care for himself. (R. 288-89.) Dr. Boger noted that Plaintiff can be independent and can be off task. (R. 291.) He also noted that Plaintiff's behavior improved with medication. Id.

Ms. Rayburn, Plaintiff's first grade teacher, filled out a teacher questionnaire on December 16, 2005. (R. 306-13.) On the questionnaire, she noted that Plaintiff had only slight problems with vocabulary, math problems, learning new material and applying problem-solving skills in class discussions. (R. 307.) She further noted that Plaintiff must sit away from the other students due to his off-task behavior. Id. Ms. Rayburn also reported that Plaintiff had a serious problem working without distracting himself or others. (R. 308.) However, she found that Plaintiff had no problems interacting and relating with others, moving about and manipulating objects, and caring for himself. (R. 309-11.)

Plaintiff's final grades from kindergarten included all "satisfactory" and "excellent" grades. (R. 139.) Notably, Plaintiff had improved in the areas of reading and language arts. (R. 137, 139.) With regard to Plaintiff's personal development and study skills, the report card discloses that Plaintiff required improvement in his respect for authority, respect for others and his self control. Otherwise, Plaintiff had a positive attitude, put forth a good effort, followed directions the first time given, worked independently and came prepared to class. (R. 140.)

In the decision, the ALJ determined that Plaintiff suffers asthma, a history of asthmatic rhinitis and a speech impairment. (R. 16.) The ALJ then found that Plaintiff's impairments did not meet, medically equal, or functionally equal the criteria for any listed impairment. Id. With regard to Plaintiff's ADHD, the ALJ found that Plaintiff had some problems in attending and completing tasks but that the record had shown significant improvement in Plaintiff's speech and language, behavior and attention. (R. 18.)

In concluding that Plaintiff's impairments did not functionally equal any listing, the ALJ found that Plaintiff had no marked limitations in the domain of acquiring and using information; less than marked limitations in the domain of attending and completing tasks; marked limitations in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; less than marked limitations in the domain of caring for himself; and less than marked limitations in the domain of health and physical well-being. (R. 17-21.) Accordingly, based upon the ALJ's evaluation of these factors he concluded that that Plaintiff was not disabled.

## V. **DISCUSSION**

Plaintiff's sole argument is that his impairment meets or medically equals Listing 112.11, which concerns ADHD. Plaintiff contends that the ALJ should have found that Plaintiff had marked limitations in his attention, impulsiveness and hyperactivity; and should have found at least two marked impairments in cognitive/communicative functioning, social functioning, personal functioning or maintaining concentration, persistence or pace.[26]

To meet a listing, a claimant must have a diagnosis included in the listings and must provide medical findings that support each of the criteria of the relevant listings.[27] "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[28] Furthermore, mere diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings.[29]

Listing 112.11 for ADHD, provides in pertinent part that for a child to meet the required level of severity for this listing, the child must show medically documented findings of all three of the following: (1) marked inattention, (2) marked impulsiveness, and (3) marked hyperactivity, and establish at least two of the following: (1) marked impairment in age-appropriate cognitive/communicative function; (2) marked impairment

---

[26] 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 112.11; 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 112.02, paragraph B2.

[27] Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002.)

[28] Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

[29] Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991.)

10

in age-appropriate social functioning; (3) marked impairment in age-appropriate personal functioning; or (4) marked difficulties in maintaining concentration, persistence, or pace.[30]

Plaintiff failed to meet her burden of establishing that he was presumptively disabled under Listing 112.11. Although Plaintiff was diagnosed by Dr. Siddiqi with ADHD (R. 304), there is no other medically documented evidence that supports the required findings and criteria for this Listing.

With regard to the first requirement of the Listing - marked inattention, marked impulsiveness and marked hyperactivity - Plaintiff's teacher acknowledged a severe problem with off-task behavior and distracting himself and others. (R. 307-08.) However, as the ALJ properly noted, and as the medical records show, four months after Plaintiff's first examination by Dr. Siddiqi, Plaintiff did not exhibit disruptive behavior and was compliant with directives from both his mother and teacher. (R. 18, 300.) There is simply no other medical evidence or other evidence of record that establishes that Plaintiff had both marked impulsiveness or marked hyperactivity.

With regard to Plaintiff's cognitive/communicative function, the ALJ noted and the record evidences, that Plaintiff received speech therapy and that he has above-average speech and language skills. (R. 19, 144, 213-14.)  This is evidenced in Plaintiff's language scores form language testing which document scores above average for Plaintiff's age and document that Plaintiff demonstrated age appropriate grammatical structures. Moreover, Plaintiff's report card on his final kindergarten school year

---

[30] 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 112.11.

evidences that Plaintiff was successfully meeting grade level expectations and in some areas was exceeding grade level expectations. As such, the school records relied upon by the ALJ suggest a child with average or above average academic skills. (R. 139-40.)

With regard to social functioning, while Plaintiff's mother testified that Plaintiff was violent and was involved in two fights at school, there is no corroborative medical evidence of record suggesting that Plaintiff had any marked limitations - other than his mild speech problems - in relating to and interacting with others in a social setting. Likewise, in the area of personal functioning, while Plaintiff's mother testified that Plaintiff wet and soiled himself the ALJ appropriately noted that this was a less than marked limitation with his overall ability to care for himself. Lastly, other than during the six month period that it took Dr. Siddiqi to control Plaintiff's ADHD with medication, there is no evidence of record that calls into question the ALJ's conclusion that Plaintiff has a less than marked inability to concentrate and maintain attention, as well as less than a marked inability carry out activities at a persistent pace.

The only piece of evidence that Plaintiff points to as support for his argument that he has marked impairments in cognitive/communicative, social and personal functioning and maintaining concentration, persistence and pace, is contained in a July 2004 teacher questionnaire completed by Plaintiff's pre-kindergarten teacher. (R. 102-09.) However, notwithstanding the notations in the teacher questionnaire from the time period before Plaintiff started kindergarten, the records from two years later show a much different picture. Plaintiff's first grade teacher did not document any of the difficulties noted by the pre-kindergarten teacher, and the only issue the first grade

teacher identified, was that Plaintiff had issues with off-task behavior and distracting himself and others.

In sum, the record fully supports the view that Plaintiff's overall speech, behavior, concentration and social functioning improved greatly throughout his time in kindergarten and up to his current condition and functional abilities. There was simply no medically documented evidence that Plaintiff's condition and functional abilities resulted in marked limitations in any of the areas of the six domains of functioning and, thus, the ALJ did not err by finding that Plaintiff had failed to meet the criteria for Listing 112.11.

Accordingly, for these reasons, the Court concludes that substantial evidence supports the ALJ's decision that Plaintiff failed to meet his burden of establishing that his ADHD impairment resulted in the marked limitations required to meet Listing 112.11.

## VI.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 28, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
　　All Counsel